The second case for argument is Sioux Steel v. Ins. Co. of the State of PA Good morning. Thank you, Your Honors. If it may please the Court, my name is Samuel Stroman and I am here representing plaintiff-appellant Sioux Steel in the matter of Sioux Steel v. Ins. Co. of the State of PA If I may, I'd like to reserve three minutes at the end of this for rebuttal. Sioux Steel is a manufacturer of hopper bin silos and other agricultural storage commodity devices based out of Sioux Falls, South Dakota. Sioux Steel does not sell any type of or provide in any capacity any type of custom design or engineering services to third parties. All professional services that Sioux Steel is engaged in go directly into the products it manufactures. And so Sioux Steel, then, is only the recipient of professional services. And it is important to note that the hopper bin silos that failed in Tepic, Mexico in 2015 left the factory floor, then, with the engineering defects that caused the failure. At issue today before the Court, or on appeal here, Sioux Steel is raising three contentions. The first two bleed together and they are based on the District Court's interpretation of the professional services exclusion. The third issue, then, would be contingent on this Court's ruling on the first two, and that's whether the District Court erred in its granting of ISOP's motion for summary judgment. ISOP is the appellee in this matter. And so I will, for your convenience, refer to them as ISOP. Whether the District Court, then, was correct or erred in its granting of ISOP's motion for summary judgment in its denial of Sioux Steel's cross-motion for partial summary judgment. The insurance exclusion that's at issue here today is a professional services exclusion, or a PSC. And so the language of the PSC would read that there is no coverage under Sioux Steel's insurance policy for any failure that arises from the rendering of, or failure to render, any professional service by you, you being, in this case, Sioux Steel, or any employees rendering those services, then, on your behalf. And so Sioux Steel's contention is that the correct interpretation of this professional services exclusion is to, excuse me, this is to preclude coverage for professional services provided for either by the insured or an agent of the insured, independent of the professional services that went into the product that Sioux Steel manufactures. And so, because of that, the district court's decision that both the exclusion here is unambiguous and it applies to preclude coverage, Sioux Steel's position then is that the district court was in error in making What's the ambiguity you assert is in this language? Well, Your Honor, the ambiguity comes from the interpretation of the phrase rendering of, or failure to render, as it's stated within the policy. And so, Sioux Steel's position has always been that the definition I gave or the interpretation I gave just a moment ago is the interpretation that courts have always used. The district court's... I didn't understand your interpretation, so I can't ask you what... I'm just not following. I thought I understood the issue from the briefs and I don't from what you've said so far. Oh, my apologies, Your Honor. I mean, rendering... The plain meaning of rendering is consistent with the district court's ruling. Well, the district court... Where are you getting all these courts... Have all of you said your interpretation is the plain meaning? I believe that Sioux Steel's interpretation is the plain meaning in that the interpreter... Excuse me, the professional... It's not. I mean, render means to give. Yes, Your Honor, and Sioux... You can't find this as plain meaning out of any dictionary in the universe, I suspect. Yes. You may find alternate possible interpretations. Under the facts of the case, Your Honor, Sioux Steel did not actually render or give any type of professional services to any party.  Well, Chad Kramer rendered his services to Sioux Steel, and so Sioux Steel was the recipient of those professional services, but those services were not rendered on Sioux Steel's behalf. And so currently, I am rendering a professional service on behalf of my employer, and these professional services are to Sioux Steel. All right, what's your best case for this? I know you make the argument, if it's rendered to the insured, then the exclusion doesn't apply. That strikes me as wrong... Well, Your Honor, I... ...in terms of just interpreting an exclusion that seems to be quite clearly written. Well, Your Honor, I believe that under the district court's interpretation, that phrase, rendering of or failure to render, can essentially be stricken from the exclusion entirely, and its meaning would remain then unchanged. And so... No, no, no, there has to be a causal connection between the professional services and the damage. Yes, Your Honor, there has to be a causal connection... Between the two prongs, I believe, that both parties agree on within the exclusion. The failure may not just arise from professional services... Didn't I just state briefly the district court's reasoning? I would say that was an accurate summation of the district court's. All right, so what... Give me a case from any jurisdiction that says that's wrong. That the reception of a professional service counts as the rendering of a professional service? No, that the issue is whether the professional services that were rendered... Well... ...by the insured or on the insured's behalf must have a causal connection to the damage caused, the claim, therefore, for coverage. Yes, Your Honor, and it would appear under leverance or Scottsdale v. Co-Act or like case law involving products... Well, leverance was thoroughly analyzed by the district court and the briefs, and I think I've gone and read Gateway and I've read TSP, and I think you're on the short end of that debate. Well, Your Honor, I believe that in Gateway or TSP, agents of the insured rendered those services then outward. They gave those services to somebody other than the insured themselves, and so that would be one of the distinguishing factors here. Let me follow up on that. Yes, Your Honor. It's sort of looking at it from the other direction. It's my understanding that there's never been a court anywhere that applied the professional services exclusion to an entity that did not provide professional services to a third party, not to itself. Yes, Your Honor, that is correct. That is our understanding as well. And so we are unable to or have been unable to locate any product manufacturers to which this exclusion has been applied where all of the professional services at issue went directly into the product and then the product then went out into the stream of commerce. That would be similar to leverance or Scottsdale versus Co-Act systems, both of which had product failures that those professional services that ultimately caused the failures were deemed, I would say, not to have been rendered by the insured or an agent of the insured, but instead were part of the product itself. And so the distinction here then is that without that rendering of or failure to render by the insured or an agent of the insured holding themselves out and giving that service out, only one of the two prongs then under this exclusion is going to be met. And that's why Sue Steele's position has been that the correct interpretation then is that it applies to those products or, excuse me, those professional services provided independent of what goes into the product itself. And that does appear to be harmonious with all of the case law cited by both parties or the district court here. And so if we assume then that that interpretation is correct or that the district court's interpretation is incorrect here, or rather if the district court's interpretation is correct, might be a better way to phrase that, that removal of the phrase rendering of or failure to render, the policy remains unchanged. And so you could strike that phrase and have the meaning be exactly as Judge Loken had described just a moment ago, that if the failure arises from a professional service, then this exclusion would apply to preclude coverage. However, the exclusion doesn't say that the failure must arise from a professional service. It's a professional service by you or any engineered, employed, or performing work on your behalf. What could be clearer? Well, Your Honor, I believe then, still I believe that gets us back to the previous point that under that interpretation, or if the self-rendering or self-contained rendering of professional services counts within the policy, then that phrase has become superfluous within the policy in a way that's inadequate to South Dakota law. The causal connection is an interpretation of the rendering. If it's not rendered, then there's not the required causal connection. Just applying it, I thought that's the way the District Court applied and interpreted South Dakota law. Well, Your Honor, I believe if we review the District Court's interpretation, it was a bit circular in that Sioux Steel, having received professional services both from its employee, self-contained reception of those professional services, or received services from KC Engineering, that it thereby rendered those professional services. The services were rendered by Sioux Steel's employee that Your Honor, I believe it was the underlying transaction. There wouldn't have been the bin wouldn't have wound up in Mexico without the I suppose you want to have a trial on the due diligence of Avion? Oh, Avion? No, Your Honor. I believe that Sioux Steel's position here would be then that the rendering is required to be outward, given the very plain nature of the word that it means to give. But as it's noted, that requires adding language to the exclusion. Your Honor, I believe that is Your Honor, I believe that is I guess implied within the exclusion doesn't require the addition of language, and rather the alternative is that under the District Court's interpretation, language is removed or can be removed, or the effect of that language can be removed, and the provision remains otherwise unchanged. I don't understand I don't understand the argument. Your Honor, I suppose to briefly... If you took out the rendering language, what's left? Well, if you take out the rendering language, then it would just be attributable to any failure caused by professional services rather than any failure caused by the rendering of professional services. This is why the bulk of the case law that is cited by both parties, virtually all case law with the exception of leverance, is dealing with professionals selling their service for a fee, independent of services going into products. And that's why Sioux Steel believes that that is the correct interpretation. If I may, I'd like to reserve the last two minutes for rebuttal unless there are any other questions. Thank you, Your Honor. Thank you. Mr. Moon. Good morning, Your Honors. May it please the Court, Cody Moon on behalf of Defendant Appali, the insurance company of the state of Pennsylvania. I think in this insurance coverage dispute involving application professional liability exclusion, exactly what this Court has already hit on is the key. It's the important part of this of there is no ambiguity in this exclusion. The exclusion language is what we have to start with, and it's what Sioux Steel admits in its briefing is plain and unambiguous. Throughout the underlying proceedings, Sioux Steel multiple times represented to the District Court that it was not seeking to use extrinsic evidence. It multiple times represented that this was plain and unambiguous. In looking at how Sioux Steel has chosen to present its briefs to this Court, we know that there is an anomaly. The opening brief actually starts by quoting in paragraph form the language from the PL exclusion. But then later, Sioux Steel's brief decides to paraphrase it, and when they paraphrase the exclusion, they're putting it in a block quote format, which makes it seem it is the actual language. They did the same thing on page one of the reply brief. The exclusion itself, the language from the exclusion itself is what must be looked at. That is contained on page 86 of the appendix. The exclusion itself, the professional liability exclusion, endorsement number six to the ISOP policy, provides that the insurance does not apply to bottle injury or property damage arising out of the rendering or failure to render any professional service by you or any engineer who is either employed by you or performing work on your behalf. And I paraphrase that. Why couldn't the word services be read to apply service to a third party rather than to oneself? There is nothing about professional services, which is a defined term, which could then interpret that to a third party. That is not a requirement under this exclusion. The parties, in entering into the contract, the ISOP policy, selected a definition of professional service, and that definition must be applied. Sue Steele does not dispute the parties are in agreement that the engineering activities performed in this matter, meaning the engineering activities by its employee engineer, Chad Kramer, by its engineering consultant, Casey Engineering, and even the engineering activities by Sue Steele itself, that those qualify as professional services. There is nothing about this exclusion in the language that I read to you that requires an external performance of professional services. That could have been a term of the endorsement, but that's not what the exclusion says. Has any court anywhere ever applied this provision in the way that you're proposing? It's my understanding that it's never been applied outside of a situation where the services were rendered to a third party. I can't tell you right now whether there's any court that's ever done that to a... Can you cite me one? What I can tell you is that the specific plain language of this exclusion has been applied. What Sue Steele is doing is they're setting up a straw man argument. They're inserting language requiring this be professional services to someone else. They're requiring an external performance. That's not what's in the exclusion. I would not expect other courts to address the issue of whether or not it requires it to be performed to an external source when that's not part of the exclusion. It wouldn't be relevant to a court's determination of whether the exclusion applies. What matters for the exclusion to apply is whether there was a rendering of professional services by you, Sue Steele, or whether there was a rendering of professional services by an engineer employee of Sue Steele, or whether there was a rendering of professional services by an engineer performing work on Sue Steele's behalf. All three of those were satisfied in this case. All three of those instances, there were professional services, engineering activities by Sue Steele. Sue Steele admitted in the underlying case in response to request for mission number three that Sue Steele designed the Hopper-Sylord issue. Designing it is a professional service. Sue Steele admitted, including multiple times in its appellate briefing, that Kramer performed engineering activities and those were professional services. The same thing as to Casey Engineering. At all points in time, the rendering of professional services by you, by an engineer employed by you, and by an engineer performing work on your behalf were satisfied. It is not appropriate to read into the exclusion a requirement that services be performed to someone else or that services be performed externally. The district court, in her opinion, also decided that issue. She addressed that. She went further than just determining. Here, Chad Kramer did perform services for someone else. He performed them for Sue Steele. Casey Engineering did render the engineering activities, the professional services for someone. It did it for Sue Steele. Was there any aspect of the negotiations between the plaintiff and the insurer as to whether or not they were covering the products that were being produced by Sue Steele? I'm sorry. Was there any discussion? Yes. Is it in the record anywhere that the purpose of this insurance was to cover potential product liability? No. During the course of negotiation of this insurance policy, there were no negotiations. There's nothing in the record regarding the negotiations between ISOP, the insurance company, and Sue Steele, the insurer. As the court determined and as this court is aware, Sue Steele is attempting to rely on extrinsic evidence now. Even though it said it didn't want to do that, it's attempting to do that now and to rely on extrinsic evidence being testimony from an employee of ISOP, an underwriter, who was not authorized to speak, who's giving opinion testimony that is not competent, all of which is addressed in our briefing. She was asked a question out of context and provided a response. That response was given approximately six months after Sue Steele had already settled the underlying case. That extrinsic evidence has no bearing on the formation of the contract here or what was meant at the time. Indeed, even in cases involving latent ambiguities, which is what Sue Steele is attempting to argue in this case, the negotiation history and the past history between the parties can be considered. This thing that they're trying to rely on is not past negotiations. It's not past history. It's also not something that Sue Steele relied on when it chose to settle the Avion claim. That statement was months after the fact of the settlement. In her testimony, that individual, Ms. Austin, specifically testified, as cited in the record, that she only gave one part of an answer. She didn't give a complete answer, that she was not provided any context, that she never looked at the exclusion before answering. She was never made aware of the claim pending against Sue Steele, which at that point had already been settled. There was nothing provided to her. It was an off-the-cuff question out of the blue, to which she also responded to out of the blue without having the benefit of being aware of the circumstances under which someone was trying to ask her a question. She also made it very clear that she does not adjust claims. She is not someone who is allowed to interpret the policy and determine whether or not this would be applicable. The information about the latent ambiguity issue is really a red herring. It is not something that matters, and it's not something that is allowed to be considered under South Dakota law in this type of context. Importantly, it's also not something Sue Steele tried to do before the district court. Sue Steele very clearly told the district court that it was not trying to use extrinsic evidence. It was not trying to vary the contract terms. Never once during the district court proceedings did Sue Steele say that there was a latent ambiguity. That phrase never exists in the underlying briefing. It was also never addressed by the district court's decision. It's a brand new argument raised for the first time on appeal, which is improper. Going back to one of the earlier questions about the application of this exclusion to this type of context, it is important to look at what the South Dakota Supreme Court has done. The Supreme Court of South Dakota in the Gateway case and in TSP adopted a cause test. What they looked to determine whether or not the professional liability exclusion applies is whether the professional services were the cause of the bodily injury or property damage. That's the same analysis, the same test that the Wisconsin Supreme Court applied in the American Girl case when it distinguished leverance, a court of appeals decision. In distinguishing leverance, the Wisconsin Court of Appeals also looked to that ultimate cause. They reasoned in their distinguishment of leverance that leverance was very different because there was a dispute in that case in leverance about whether or not the property damage was caused by the professional services, the engineering work, or was it caused by a manufacturing issue. The Wisconsin Supreme Court described that as the two services, professional services and manufacturing services becoming inextricably combined. For that reason, there was a question of fact that had yet to be resolved. That was not the case in the Gateway decision by the Supreme Court of South Dakota or in the TSP case by the South Dakota Supreme Court or by the American Girl case. In each of those cases, just like in this case, there is no question that the cause of the bodily injury and property damage was the engineering services. Sue Steele readily admits it. There's no dispute. There's no claim that this was a manufacturing defect. Instead, the engineering employee, Chad Kramer, admitted, and he discovered this the day after the accident. He admitted he made an engineering error. He made a miscalculation. He forgot to check something. That's what caused the accident. Sue Steele also argued that that was caused by the failure of Casey Engineering to catch it when they were doing their peer review or their check of the system. Either way, it's an engineering error that caused these damages. That's what sets this case very different to Leverance. Leverance was a case where it was unknown whether it was a professional service or a manufacturing service that caused it. Here, there is not that unknown. There are a couple of other issues that are raised by this appeal, which we do want to briefly touch on. That goes to the questions of breach of contract for duty to defend, breach of the duty to indemnify, the claims for punitive damages and attorney's fees. The most significant one of those is the duty to defend argument, which again, Sue Steele raises a new argument on appeal. On appeal, Sue Steele now argues relying on the Beigler v. American Family case that the South Dakota courts have recognized that there can be a duty to defend even when there is not a suit. Sue Steele is wrong. Sue Steele is mischaracterizing what the court held in that case. In Beigler, there was a suit filed. There was a complaint that was filed. American Family had denied coverage before that complaint was filed. After the complaint was filed, American Family believed that it had no obligation to do anything because American Family took the view that there was not a, quote, suit defined the same way as the policy because in that case the defendant had not, the insured, had not accepted service or been properly served. So American Family believed there was not a suit because there was not a formal service. In making its argument to this court, Sue Steele takes the first part of the argument that there was a denial before suit was filed, but then Sue Steele transitions to a different case for the proposition rather unremarkable under South Dakota law that a suit that is not commenced if it doesn't follow the procedural requirements there. But that's not what the issue was in the Beigler case. That other rush case is just simply non-destructive for us here. In Beigler, there was a suit. It is disingenuous for Sue Steele to suggest that there was no suit commenced and in fact, in the Beigler decision, one of the things the court is considering was the breach of the duty to defend aspect and it cites the very specific jury instruction that was provided. And in jury interrogatory number four, the question that was asked was whether or not American Family did the insurer act in bad faith when it breached contractual duty to defend in the lawsuit commenced by the plaintiff. The court in its jury instructions had already determined that a lawsuit was commenced. There couldn't be an issue as to whether or not there was a commencement of it. Sue Steele is trying to piece two different things together to make its argument. That case is very distinguishable from the one here where no suit was ever filed. For the same reason that the professional liability exclusion applies, there could not be a breach of the duty to indemnify. There also cannot be a basis to award punitive damages. In South Dakota, malice is a required element of punitive damages. Sue Steele has never argued, has provided no facts or arguments as to why there is malice. Yes. And Sue Steele is appealing it. And so for the same reasons that the district court agreed that there was dismissed and granted summary judgment on the punitive damages and on the attorney's fees, we think this court should affirm on the same basis. And we note that Sue Steele, in its briefing, provided no specific argument or facts for this court to rely on to reverse the court's decision. Thank you. Thank you. Yes. Thank you, Your Honors. And there are just a few matters I'd like to address. First, in regards to Judge Smith's question regarding the negotiations or the, I suppose, the mindset of the parties as they entered into the contract, the email and the deposition testimony that Mr. Moon referenced in his argument just a moment ago is from the senior global underwriter, Leah Austin is her name. And the email is from the broker, Sue Steele's insurance broker, Jared Muller. And so What does that have to do about, why is that relevant? The question was pre-policy negotiation, wasn't it? Well, I believe that she was the policy underwriter. Leah Austin had underwritten the policy. What does that have to do with the parties negotiating the scope of the coverage? Well, I believe that Ms. Austin was in the position at that time, at least, to best determine what the mindset of the parties was as they entered into the contract and what the purpose of that exclusion was when the parties had entered into the insurance contract. Then I would also like to address then the so-called cause test that Mr. Moon has referenced as far as Gateway is concerned. It is our position that the cause test only applies to the second of the two prongs in Gateway, TSP and other like cases including American Girl. Whether professional services had been rendered by the insured was not up for debate. And in those cases the question was then whether those professional services gave rise to the failure in issue. In American Girl, just to clarify as far as the distinguishing from Leverance, the court held that there was an analytical dilemma from the inextricable link between the product and the services that wasn't present in American Girl. That's because in American Girl the professional service was rendered outward. A gentleman went out and performed a soil sample. And with that, Your Honors, I see I am out of time. Thank you so much. And Sue Seal urges reversal. Thank you. Thank you, Counsel. The case has been thoroughly briefed and well argued. And we'll take it under advisement.